**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**


**CIVIL ACTION NO. 2:21-cv-030 (WOB-CJS)**


**BEULAH M. MURPHY**                                                    **PLAINTIFF**


**VS.**                          <u>**MEMORANDUM OPINION AND ORDER**</u>


**INDUSTRIAL CONTRACTORS SKANSKA,**
**INC., ET AL.**                                                       **DEFENDANTS**


Beulah "Mary" Murphy ("Murphy") brought this action against Industrial Contractors Skanska, Inc. ("Skanska") and Operating Engineers Local 181 ("Union") for alleged employment discrimination based on disability, sex, and age. Currently before the Court are Defendants' Motions for Summary Judgment. (Doc. 89; Doc. 90).[1]

---

[1] Plaintiff has also filed a Motion for Leave to File a Sur-Reply in Opposition to Defendant Skanska's Motion for Summary Judgment. (Doc. 106). Plaintiff's arguments therein and the arguments of Defendant Skanska that they respond to regarding the potential ethical violations committed when Plaintiff's counsel recorded phone calls with witnesses and Defendant Skanska's counsel allegedly attempted to raise the threat of disciplinary action with the State Bar as a litigation tactic, (*see* Doc. 103 at 12-13; Doc. 106-4 at 1-4), have little bearing on the discrimination claims currently before the Court. However, the Court will nonetheless grant Plaintiff's Motion in favor of considering all briefing submitted by both parties. The Court will also decline to seal any portion of Plaintiff's Sur-Reply or Plaintiff's Reply in Support of her Motion for Leave to File a Sur-Reply, (Doc. 109). Although Skanska raised a request to seal Plaintiff's Sur-Reply in its Response in Opposition to Plaintiff's Motion, (Doc. 107 at 7), and it filed a Motion to Seal Plaintiff's Reply, (Doc. 110), "personal attacks" on counsel do not create a compelling reason to seal those documents sufficient to overcome the "strong presumption in favor of openness as to court records." *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (internal quotation marks and citation omitted). Further, despite Murphy's agreement to seal her Sur-Reply,

The Court has carefully reviewed this matter and, being advised, now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

At all relevant times, Plaintiff Murphy was a member of Defendant Union. (Doc. 89 at 2; Doc. 94 at 1). On May 22, 2019, Murphy began working for Defendant Skanska as an Operator for heavy construction equipment at the East Kentucky Power Project. (Doc. 89 at 2-3; Doc. 95 ¶ 5). She obtained the job by accepting a referral from the Union's hiring hall and the terms and conditions of her employment were governed by a Collective Bargaining Agreement ("CBA") between the Union and Skanska. (Doc. 89 at 3; Doc. 94 at 1-2).

During her first day on the job, Murphy underwent safety training with a third-party consultant. (Doc. 89 at 17; Doc. 89-7 at 1). She also completed customary "new hire" documents, including a Voluntary Self-Identification of Disability form, on which she checked the box indicating "NO, I DON'T HAVE A DISABILIITY." (Doc. 89 at 3-4; Doc. 89-3 at 1).

---

(Doc. 109 at 4), the parties may not waive the public's right of access to court filings. *See Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016). Accordingly, Skanska's Motion to Seal Plaintiff's Reply, (Doc. 110), and the request it made to seal Plaintiff's Sur-Reply in its Response, (Doc. 107 at 7), will be denied.

At the time, Murphy was suffering from an impairment of her vision in both eyes due to cataracts secondary to a shingles infection. (Doc. 89-1, Murphy Dep. at 32:5-33:3; Doc. 89-13 at 3).[2] She had worse vision in her left eye. (Doc. 89-1, Murphy Dep. at 32:16-19; Doc. 89-13 at 3). Murphy testified that, during the safety orientation, she was told that "everybody's going to have a spotter," so she did not mark the box indicating that she might need assistance for a disability. (Doc. 89-1, Murphy Dep. at 41:2-10).

Eight days later, on May 30, 2019,[3] Murphy drove the skid steer she was operating forward into a box where she was supposed to dump a load of rocks. (*Id.* at 34:1-35:6; Doc. 89 at 4; Doc. 89-2 at 1; Doc. 94 at 2). This caused the skid steer to tip over and, according to a letter written by Jamie Poole ("Poole"), the project superintendent, Murphy "did not have the knowledge of how to . . . upright the equipment back to normal operating position." (Doc. 89-2 at 1). Ultimately, the skid steer lost four quarts of oil during the incident, which caused damage to its motor. (*Id.*).

---

[2] Murphy's cataracts were diagnosed prior to the start of her employment with Skanska, but her ophthalmologist noted that they had "gotten significantly worse" between February and July 2019. (*See* Doc. 89-13 at 3; Doc. 89-14 at 6).

[3] In its Motion for Summary Judgment, Skanska contends that the skid steer incident occurred on May 31, 2019, but its internal documentation reflects that it occurred on May 30. (*See* Doc. 89 at 4; Doc. 89-2 at 1).

According to Murphy, she drove the skid steer into the box because she "couldn't see where the end was." (Doc. 89-1, Murphy Dep. at 34:19-25). She noted that the cause of the accident was "[n]ot being able to see" and stated that, at the time of the accident, the "[o]nly thing I could see was in front of me, and if my eyesight was bad, I couldn't even see in front of me. It was just like being out there blind." (*Id.* at 50:16-19, 51:1-4).

Subsequently, Skanska tasked Murphy with operating a forklift. (Doc. 89 at 4; Doc. 89-2 at 1; Doc. 94 at 2). However, according to Poole, Murphy "could not run it as efficiently/safely" as was required because she "had a hard time picking up skids with forks . . . ." (Doc. 89-2 at 1). Thus, Skanska terminated Murphy's employment on May 31, 2019. (*Id.*; Doc. 89 at 4; Doc. 94 at 2; Doc. 102 at 1).

After her termination from Skanska, Murphy accepted Union referrals for several jobs with other employers between June 2019 and December 2020. (Doc. 95-14 at 37-38). On June 19, 2019,[4] Murphy emailed Rick Lewis ("Lewis"), the Union's Business Agent, requesting to file a grievance against Skanska because they had "brought in more men to work after [she] was released." (Doc. 94 at 2; Doc. 101-5 at 2-3). The Union investigated the circumstances

---

[4] The Union contends that Murphy sent that email on June 14, but the copy of the email filed in the record indicates that it was sent on June 19. (*See* Doc. 94 at 2; Doc. 101-5 at 2-3).

of Murphy's termination and, on June 24, 2019, Lewis called her to inform her that the Union's "attorney had advised that there was no grievance to move forward." (Doc. 94 at 3; Doc. 101-5 at 2).

Murphy filed charges against the Union with the National Labor Relations Board ("NLRB") on May 8, 2019, and July 17, 2019. (Doc. 95-14 at 1-2). The NLRB dismissed one charge "because there [was] insufficient evidence" and Murphy voluntarily withdrew the second charge. (*Id.* at 17; Doc. 89 at 6).

On November 27, 2019, Murphy cross-filed a charge of discrimination with the Kentucky Commission on Human Rights ("KCHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging that, on May 31, 2019, she had been terminated based on her age and disability. (Doc. 89 at 6; Doc. 89-17 at 1-2).[5] On September 25, 2020, the KCHR dismissed Murphy's complaint, finding that "[t]here is no probable cause to believe that [Skanska] has engaged in an unlawful practice in violation of the Kentucky Civil Rights Act." (Doc. 89 at 6; Doc. 89-18 at 1; Doc. 94 at 4). The EEOC adopted those findings and issued a Notice of Right to Sue on October 27, 2020. (Doc. 89 at 6; Doc. 89-19 at 1).

---

[5] In that charge, Murphy erroneously identified her employer as East Kentucky Power, but she subsequently amended her complaint to correctly identify Skanska. (*See* Doc. 89-17 at 1, 3).

Murphy filed this lawsuit in Mason County Circuit Court on January 22, 2021, and thereafter, both Defendants[6] removed it to this Court. (Doc. 1). In it, Murphy has raised claims against Skanska for disability discrimination under the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"), sex discrimination under the KCRA, and age discrimination under the Age Discrimination in Employment Act ("ADEA") and the KCRA. (Doc. 1-1 ¶¶ 66-146). Murphy has also sued the Union for sex, age, and disability discrimination under the KCRA. (*Id.* ¶¶ 147-209).

Both Defendants filed motions to dismiss. (Doc. 7; Doc. 30). Skanska argued that Murphy's KCRA claims were barred by administrative preclusion, the Union argued that Murphy had not exhausted her administrative remedies, and both Defendants argued that her claims were preempted by the Labor Management Relations Act ("LMRA"). (Doc. 7 at 1-2; Doc. 30 at 1-2). The Court denied both motions. (Doc. 23; Doc. 33). After several protracted discovery disputes, the Court denied Murphy's motion to extend discovery deadlines for the sixth time, and discovery in this matter closed on April 28, 2023. (Doc. 98 at 2-4).

---

[6] Union's removal resulted in a different case number before this Court: 2:21-CV-032 (WOB). (Doc. 8 at 1). However, the Court subsequently consolidated the cases. (*Id.*).

*Analysis*

Under federal law, summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Summary judgment is inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id*. However, "[t]he non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e)(2)).

## A. Administrative Preclusion

First, Skanska argues that Murphy's state law claims of disability, sex, and age discrimination are barred by

administrative preclusion because the KCHR found that there was no probable cause to believe that it violated the KCRA. (Doc. 89 at 8-9). At the motion to dismiss stage, the Court declined to consider materials outside Murphy's complaint and, accordingly, found Skanska's argument to be "fatally premature" at that time. (Doc. 23 at 3-4).

Although the Court may properly consider Skanska's argument now, it need not resolve the issue. Skanska cites the Sixth Circuit's opinion in *Herrera v. Churchill McGee, LLC*, 680 F.3d 539 (6th Cir. 2012), in support of its preclusion argument, (Doc. 89 at 9), but it is unclear how much of *Herrera* remains good law in light of subsequent case law from the Kentucky Supreme Court. *See Lackey v. Am. Heart Ass'n, Inc.*, No. 3:20-CV-422, 2021 WL 150016, at *3 n.3 (W.D. Ky. Jan. 15, 2021) (citing *Owen v. Univ. of Ky.*, 486 S.W.3d 266 (Ky. 2016)) (finding that a portion of *Herrera* had been "effectively overruled"). Because, as discussed below, the Court concludes that each of Murphy's KCRA claims fails on the merits, it declines to opine on whether the KCHR's findings preclude those claims.

### B. LMRA Preemption

Skanska and the Union also renew their arguments that Murphy's KCRA claims are preempted by § 301 of the LMRA. (Doc. 89 at 9-11;

Doc. 94 at 5–10, 15–19).[7] "The Supreme Court has . . . held that when 'resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.'" *Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). A plaintiff's claims are preempted by § 301 if either: (1) resolving the state-law claim would require interpretation of the terms of the labor contract or (2) the rights claimed by the plaintiff were created by the labor contract instead of by state law. *Id.* (citing *Mattis v. Massman*, 335 F.3d 902, 906 (6th Cir. 2004)).

When determining whether a plaintiff's state-law claim requires CBA interpretation, courts are not bound by the well-pleaded complaint rule, but instead look to the "essence" of the claim to decide whether it could be proven without the necessity of contract interpretation. *Id.* at 522 (citing *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994)). But "neither a tangential

---

[7] Although Murphy correctly points out that some of filings Union made in connection with its Motion for Summary Judgment were made after the deadline of June 12, 2023, (*see* Doc. 92; Doc. 93; Doc. 101 at 1), the Court will nonetheless consider those filings. Notably, Union's Motion for Summary Judgment and its accompanying Memorandum in Support were timely filed, (*see* Doc. 90; Doc. 91), and the other filings, Union's Statement of Uncontroverted Material Facts, the accompanying exhibits, and a proposed order, were submitted less than one hour late. (*See* Doc. 104 at 13).

relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *DeCoe*, 32 F.3d at 216 (citing *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990)).[8]

As to Skanska's preemption argument, the Court finds no reason to disturb its prior holding that it cannot succeed. (*See* Doc. 23 at 4–6). Murphy's right to be free from employment discrimination arises from the KCRA, not from the CBA between Skanska and the Union. Further, the Court need not interpret the CBA to resolve those claims. Murphy's dispute with Skanska does not arise from difference of opinion as to the "interpretation and application of th[e] CBA terms," but rather comes from a disagreement as to the reason for her termination. *See Paul*, 701 F.3d at 523.

The elements of Murphy's discrimination claims, including whether she was qualified for her position, replaced by someone outside her protected class, or treated differently from a similarly situated, non-protected employee, do not depend on any

---

[8] Some district courts in the Sixth Circuit have held that, at the summary judgment stage, preemption may arise from a defendant's defenses. *See DeShetler v. FCA US LLC*, No. 3:18-CV-78, 2018 WL 6257377, at *11 (N.D. Ohio Nov. 30, 2018), *aff'd*, 790 F. App'x 664 (6th Cir. 2019); *Douglass v. Carlex Glass Co., LLC*, No. 3:14-CV-468-TAV-HBG, 2015 WL 12532115, at *3-4 (E.D. Tenn. Sept. 30, 2015); *Howard v. Cumberland River Coal Co.*, 838 F. Supp. 2d 577, 581–82 (E.D. Ky. 2011). But the Sixth Circuit has never overruled *DeCoe*, which was decided on appeal from a motion for summary judgment. *See* 32 F.3d at 214. Accordingly, the Court will follow that standard.

provision in the CBA. *See Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566-67 (6th Cir. 2023) (providing elements of disability discrimination); *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (providing elements of sex discrimination); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005) (providing elements of age discrimination). Instead, each element turns on "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).

Murphy's claims against Skanska are based on different allegedly discriminatory conduct than her claims against the Union and, thus, the fact that the Union is a co-defendant in this action is not dispositive. Further, Skanska's claimed defense that it did not hire other employees based on their non-protected status, but rather because it was required to do so under its agreement with the Union, does not trigger preemption because Murphy can nonetheless satisfy the elements of her claims without reference to the CBA by pointing to the fact that those non-protected employees replaced her. *See DeCoe*, 32 F.3d at 216.

Although Skanska cites *Saunders v. Ford Motor Company*, No. 3:14-CV-00594-JHM, 2016 WL 6868155 (W.D. Ky. Nov. 18, 2016), in support of its preemption argument, (*see* Doc. 89 at 10-11), that case is inapposite. Unlike in *Saunders*, where the discrimination the plaintiff alleged was that he did not receive the protections

owed to him under the CBA because of his disability, Murphy's claims against Skanska do not reference any protections or rights contained in the CBA. *See* 2016 WL 6868155, at *5. Accordingly, those claims are not preempted by the LMRA.

But Murphy's claims against the Union fare differently. Post-discovery, Murphy has narrowed her KCRA claims against the Union to two bases: (1) that it discriminatorily failed to pursue a grievance against Skanska on her behalf and (2) that it operated its hiring hall in a discriminatory manner by failing to refer her for jobs. (Doc. 94 at 6–8; Doc. 101 at 5).

But Murphy's claim on the second ground cannot survive the Union's Motion for Summary Judgment regardless of whether it is preempted by the LMRA because she has failed to address it or point to any evidence supporting it in her Response to the Union's Motion for Summary Judgment. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when [she] fails to address it in response to a motion for summary judgment.").

As to Murphy's grievance claim, her right to be free from discrimination does not arise under the CBA but its resolution would require interpreting the CBA. Unlike her claims against Skanska, Murphy's claim against the Union does "stem from a[] difference about what the CBA provisions say or how they operate"

12

and the alleged discrimination is premised on the Union's "interpretation and application of those CBA terms . . . ." *See Paul*, 701 F.3d at 523. Murphy contends that "genuine questions of material fact remain as to Union's criteria for 'grievable' grievances and what grievances Union has deemed 'grievable' in the past." (Doc. 101 at 5). She also argues that "there is no topical limit on grievances" and that there is a question as to "whether Union pursued grievances (even allegedly untimely ones) on an unlawfully discriminatory basis." (*Id.* at 5, 13–14). The answers to the "genuine" questions Murphy poses are found in the CBA.

In *Southers v. Appalachian Regional Healthcare, Inc.*, a court in this District held that a plaintiff's discrimination claims were preempted by the LMRA because they implicated a CBA. No. 7:20-CV-126-REW-EBA, 2022 WL 740717, at *4 (E.D. Ky. Feb. 16, 2022). That court noted that the "lynchpin" of the claims was "the propriety of administration" of absence policies defined in the CBA, which had been negotiated between the defendant employer and the plaintiff's union. *Id.* The plaintiff failed to suggest comparators, point to different treatment of non-protected employees, or introduce direct evidence of discrimination, but rather, she disputed the reason for her termination, which "turn[ed] on whether [her employer] did or did not follow the CBA." *Id.* (footnote omitted).

13

Similarly, the Sixth Circuit held in *Paluda v. ThyssenKrupp Budd Co.* that, although courts can typically analyze claims of retaliatory or discriminatory discharge without interpreting CBAs, an age discrimination claim was preempted by § 301 of the LMRA where the plaintiffs had alleged discrimination in the allocation of benefits, the eligibility for which was defined by a CBA. 303 F. App'x 305, 309 (6th Cir. 2008). Accordingly, the Sixth Circuit found that the plaintiffs could not make a prima facie showing of age discrimination because they could not offer proof that they were similarly situated to non-protected, eligible employees without addressing the qualifications defined in the CBA. *Id.*

Here, much like in *Southers*, Murphy disputes the reason that the Union declined to pursue her grievance, which turns on whether the Union acted in accordance with the CBA it entered into with Skanska. *See* 2022 WL 740717, at *4. Just as the attendance policy in that case was defined in a CBA, here, the CBA delineates the appropriate topics for grievances and the requirements for bringing one. (*See* Doc. 95-1 at 11). Murphy has also failed to suggest comparators, point to different treatment of non-protected employees by the Union,[9] or introduce direct evidence of discrimination.

---

[9] Although Murphy has introduced the testimony of James Johnson ("Johnson"), a former Union member, all of his testimony about the Union's alleged discrimination against Murphy occurred when Murphy was terminated by a different employer, the Blue Grass Army Depot, over ten years ago. (*See* Doc. 101-8, Johnson Aff. ¶¶ 4-6, 15-16, 18-20).

Moreover, although she has not attempted to do so, Murphy is unable to offer proof that similarly situated, non-protected employees were treated differently without delving into the CBA. In order to satisfy the "similarly situated" element of her claims, she must show that either she and a non-protected employee both had appropriate grievances or that they both did not but were treated differently. But she cannot establish whether she or anyone else was subjected to "grievable" conduct by an employer without looking to the provisions of the CBA. *See Paluda*, 303 F. App'x at 309; *see also Slinker v. Jim Beam Brands Co.*, 213 F. Supp. 3d 871, 875–76 (W.D. Ky. 2016), *aff'd*, 689 F. App'x 406 (6th Cir. 2017) (finding that a plaintiff's claims were preempted where he could not establish that his employer discriminatorily enforced a drug policy contained in a CBA without showing that other employees engaged in the conduct defined in the policy).

Contrary to Murphy's argument that a finding of preemption would render KRS § 344.060, which prohibits discrimination by labor organizations, "useless," (Doc. 101 at 4), there are circumstances in which a union could discriminate against a member or potential member without implicating the terms of a CBA. This is just not one of those circumstances. Further, Murphy's argument that her

---

Accordingly, that testimony has no bearing on Murphy's present claim that the Union discriminatorily failed to pursue her grievance against Skanska. Because Johnson's testimony does not weigh in favor of Murphy's claims in any event, the Court need not analyze the Union's objections to it. (*See* Doc. 108 at 1).

requested grievance against Skanska was based on the Hiring Hall Rules, not the CBA, also fails because the alleged discrimination Skanska subjected her to undisputedly did not occur during the hiring process. (*See id.* at 2-3, 5). Accordingly, because resolution of Murphy's KCRA claim against the Union would require interpretation of the terms of its CBA with Skanska, that claim is preempted by § 301 of the LMRA.

This determination alone is not fatal to Murphy's claim because the Court "must 'recharacterize' the state cause of action as a federal claim and analyze the claim under federal law." *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 364 n.7 (6th Cir. 2008) (citing 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3722.1 (3d ed. 1998)). But when the Court construes Murphy's claim against the Union as if it was originally brought under the LMRA, she runs into a different problem: the statute of limitations.

Section 301 unfair representation claims are subject to a six-month statute of limitations. *Flatford v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 652 F. App'x 409, 413 (6th Cir. 2016) (citing *Adkins v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 769 F.2d 330, 334 (6th Cir. 1985)). "A claim starts to accrue 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Id.* (quoting

16

*Adkins*, 769 F.2d at 335). The statute may be tolled while the plaintiff is pursuing an internal remedy process, but "begins to run when a plaintiff 'reasonabl[y] should know that the union has abandoned' his claim." *Id.* (quoting *Wilson v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 83 F.3d 747, 757 (6th Cir. 1996)).

Accordingly, Murphy does not contest that the six-month period for her claim regarding her attempted grievance against Skanska began to accrue on June 24, 2019, the day she learned that the Union would not be pursuing that grievance. (*See* Doc. 101-5 at 2). Murphy also fails to argue that anything tolled the statute of limitations for that claim.[10] Accordingly, the filing of this suit on January 22, 2021, was over a year too late and Murphy's remaining claim against the Union must be dismissed as time-barred.

## C. Plaintiff's Disability Discrimination Claims Against Defendant Skanska

Although no Agreed Order of Dismissal has been filed, the parties agree that Murphy has voluntarily decided to dismiss her ADA claims against Skanska. (*See* Doc. 89 at 8; Doc. 89-20 at 1;

---

[10] Even if Murphy had argued that the statute of limitations was tolled by the charges she filed with the NLRB, one of which was filed before the alleged discriminatory conduct at issue in this case, (*see* Doc. 95-14 at 1), the Sixth Circuit has held that "[a]n NLRB filing . . . does not toll or prevent the accrual of [a § 301] unfair representation claim." *See Adkins*, 769 F.2d at 336 (collecting cases).

Doc. 102 at 3).[11] Accordingly, the Court will turn its attention to Murphy's KCRA claims for disability discrimination, which are based on three different theories: (1) disparate treatment/wrongful termination; (2) failure to accommodate; and (3) failure to engage in the interactive process. (*See* Doc. 1-1 ¶¶ 66-103). With one relevant exception, which will be addressed below, courts interpret KCRA disability discrimination claims under current ADA standards. *See Laferty v. United Parcel Serv., Inc.*, 186 F. Supp. 3d 702, 707-08 (W.D. Ky. 2016) (footnote omitted) (collecting cases).

### i.   Disparate Treatment/Wrongful Termination

Because Murphy does not purport to have direct evidence of disparate treatment or wrongful termination based on disability, her claims must be evaluated under the *McDonnell Douglas* burden-shifting framework. *See Hrdlicka*, 63 F.4th at 566-67 (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). Under this framework, the plaintiff first bears the burden of establishing a prima facie case. *Id.* (citing *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017)). If she succeeds, the burden shifts to her employer to offer a legitimate,

---

[11] Because Murphy has also agreed to dismiss her ADEA claim, (Doc. 89 at 8; Doc. 89-20 at 1; Doc. 102 at 3), only state law claims remain pending in this matter. However, because this case is at an advanced stage of litigation, the Court will exercise its discretion to retain supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367.

nondiscriminatory reason for its adverse employment action. *Id.* at 567 (citing *AT&T*, 847 F.3d at 395). Finally, the burden shifts back to the plaintiff, who must show that her employer's stated reason was actually a pretext for discrimination. *Id.* (citing *AT&T*, 847 F.3d at 395).

### *a. Prima Facie Case*

To establish a prima facie case of disability discrimination based on wrongful termination, a plaintiff must demonstrate that: (1) she has a disability; (2) she is otherwise qualified for her job with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability; and (5) her position remained open or she was replaced by a non-disabled person. *Id.* at 566–67 (citing *AT&T*, 847 F.3d at 395); *see also Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004)).

Alternatively, to establish a prima facie case of disparate treatment, a plaintiff can demonstrate the fifth element by showing that a similarly situated non-protected employee was treated more favorably. *See Webb v. Humana Inc.*, 819 F. Supp. 2d 641, 645 (W.D. Ky. 2011) (citing *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999)).

Skanska agrees that its decision to terminate Murphy satisfies the third element, but it contends that she has failed to satisfy the other four. (*See* Doc. 89 at 13).

As to the first element, the Court must apply jurisprudence predating the ADA Amendments Act of 2008 ("ADAAA") to determine whether Murphy was "disabled" under the KCRA. *See Laferty*, 186 F. Supp. 3d at 707 n.3 (collecting cases); *Watkins v. Shriners Hosps. for Child., Inc.*, No. 5:18-CV-548-REW-MAS, 2020 WL 2309468, at *9 (E.D. Ky. May 8, 2020) (collecting cases). Skanska argues that, under the pre-ADAAA standard, Murphy's cataracts, which were temporary and were neither reflected in her onboarding paperwork with it nor in the form of restrictions on her driver's license, do not constitute a disability. (Doc. 89 at 12-13).

But the relevant question is whether Murphy's cataracts substantially limited her major life activities, which include seeing and working. *See Norton Healthcare, Inc. v. Turner*, No. 2019-CA-0328-MR, 2021 WL 4228329, at *2-3 (Ky. Ct. App. Sept. 17, 2021) (citing K.R.S. § 344.010(4); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003)). Further, a jury should generally make the ultimate determination of whether Murphy's cataracts did limit her ability to see or work, despite any evidence to the contrary. *See id.* (citing *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 707 (Ky. 2004)).

As to the second element, "[a]n employee is deemed qualified only if she can perform all the essential functions of her job, whether accommodated or not." *AT&T*, 847 F.3d at 391 (citing 42 U.S.C. § 12111(8)). However, it is unclear whether Murphy was capable of performing her duties as an Operator. Although she was undisputedly involved in a skid steer accident, the Union's records indicate that she had the skills necessary to operate skid steers and forklifts and that she had been employed in the industry for at least fifteen years prior to accepting the job with Skanska. (Doc. 95-14 at 42–43). Moreover, Murphy accepted Union referrals for several other jobs after her termination from Skanska, each of which also required her to operate the same types of equipment. (*Id.* at 37–38).

But the Court need not decide whether Murphy could demonstrate that she had a disability or that she was qualified for her position at Skanska because, assuming that she could establish those elements, the fourth and fifth elements of her claim do not present such close calls. Murphy has not argued that anyone at Skanska knew or had reason to know of her disability. Indeed, on her Voluntary Self-Identification of Disability form, which was completed nine days before her termination, Murphy checked the box marked "NO, I DON'T HAVE A DISABILIITY." (Doc. 89-3 at 1).

Although she testified that she asked a third-party safety consultant, "[D]o I need to mark [the disability box ?]", Murphy

21

has never indicated that she informed that consultant, who was not employed by Skanska in any event, of her cataracts or that she had issues with her vision. (*See* Doc. 89-1, Murphy Dep. at 41:5-10). Accordingly, Murphy has not introduced any evidence to indicate that any Skanska employee knew or could have known about her vision impairment and, thus, she cannot satisfy the fourth element of her claim.

She has also failed to satisfy the fifth element. Murphy has not alleged that her position remained open but has instead pointed to Skanska's admission that it hired at least three Operators after her termination. (Doc. 102 at 9; Doc. 102-2 at 17). However, she has not introduced any evidence as to the disability status of those individuals. Accordingly, she has not set forth any specific facts that would create a genuine issue for trial on the final element of her wrongful termination claim.

As to disparate treatment, Murphy has similarly failed to point to evidence of disability status for any of the individuals she alleges were similarly situated but treated more favorably by Skanska. (*See* Doc. 102 at 7-8). Accordingly, she has also failed establish the fifth element of her disparate treatment claim.

### *b. Pretext*

Although Murphy's wrongful termination and disparate treatment claims fail as a matter of law because she cannot

establish a prima facie case, even if this Court could conclude otherwise, Skanska has put forth a legitimate nondiscriminatory reason for Murphy's termination, namely that she operated its equipment unsafely. (*See* Doc. 89 at 15). This shifts the burden back to Murphy to demonstrate that Skanska's proffered reason was a pretext for disability discrimination. *See Hrdlicka*, 63 F.4th at 567 (citing *AT&T*, 847 F.3d at 395).

"To establish pretext, the employee must show 'that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Id.* at 569 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). Ultimately, "a plaintiff must articulate some cognizable explanation of how the evidence she has put forth establishes pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). But "mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (internal citation and quotation marks omitted).

Murphy has not attempted to demonstrate pretext under the first method. She has not even alleged, let alone introduced evidence to show, that she did not operate the skid steer and forklift in the manner Skanska claimed she did. Moreover, at her deposition, Murphy agreed that she drove the skid steer into the

23

box where she had been directed to dump rocks. (Doc. 89-1, Murphy Dep. at 33:23–35:6).

Despite her contention and introduction of evidence indicating that the skid steer she was operating had mechanical deficiencies, (Doc. 102 at 1–2, 4–5), Murphy has not argued that any of those deficiencies caused the accident. She has admitted she drove forward into the box and, thus, any issues with the skid steer's backup cameras could not have been a relevant factor. (*See* Doc. 89-1, Murphy Dep. at 35:7–9, 51:5–9). Furthermore, she has not claimed that the skid steer's purported need for an oil change, propensity to emit smoke, or computer issues caused her to "just ke[ep] [walking]" the skid steer forward, "assuming that [she] was clear . . . ." (*See id.* at 35:12–13).

Murphy's arguments that the Court should disregard Poole's letter because he may not have had personal knowledge of the incident and because it is inadmissible hearsay do not change this conclusion. (*See* Doc. 102 at 6, 10–13). Even assuming that the Court could not take Poole's letter as evidence that the skid steer incident occurred, Murphy's admission that it did would prohibit a reasonable jury from concluding that Skanska's proffered reason has no basis in fact.[12]

_____

[12] Murphy's admission that the accident occurred also negates an argument that she made in opposition to the Union's Motion for Summary Judgment: that Donald Mack ("Mack") testified that she adequately operated the skid steer. (*See* Doc. 101 at 11). Moreover, Mack did not actually testify that she operated the skid steer "adequately," but

For the same reason, the Court need not decide whether Skanska honestly believed in its proffered reason for Murphy's termination. Murphy has not claimed that Skanska's reason was mistaken, foolish, trivial, or baseless. *See Hamilton v. Gen. Elec. Co.*, No. 3:06-CV-659, 2011 WL 1085862, at *6 (W.D. Ky. Mar. 21, 2011) ("The [honest belief] rule only applies, however, where a plaintiff demonstrates pretext 'by showing that the reason given by the employer is ultimately found to be mistaken, foolish, trivial, or baseless.'") (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714 (6th Cir. 2007)). Murphy's unequivocal admission that the skid steer incident occurred renders moot any argument that Skanska did not honestly believe it had happened.

As to Skanska's contention that Murphy could not safely operate a forklift, Murphy's only response is that "certain [f]orklifts reportedly cannot handle" the amount of weight she had been tasked with lifting. (Doc. 102 at 2). Even if Murphy had pointed to evidence other than vague "reports" that *some* forklifts could not complete the job she was assigned, that would be insufficient. She must point to evidence that, contrary to Skanska's proffer, something other than her conduct rendered her unable to safely use the actual forklift in question. Murphy has

---

merely said that Murphy "was sitting there safely out of the way" when he saw her in the skid steer, but he "never s[aw] her moving around with it[.]" (Doc. 101-10, Mack Dep. at 11).

not done so. Accordingly, she has failed to demonstrate pretext under the first method.

Murphy has also failed to demonstrate that Skanska was motivated by anything other than its proffered reason. She has not even argued that the Skanska employees responsible for terminating her knew she had a disability, let alone that such information motivated their decision.

Finally, as to the third method of establishing pretext, Murphy "must demonstrate that other employees outside of her protected class were not fired, even though they were similarly situated and engaged in substantially identical conduct to that which the employer contends motivated its decisions." *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 847–48 (6th Cir. 2015) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000)). But, as discussed above, Murphy has failed to point to evidence indicating that any of the individuals to whom she claims she was similarly situated were not disabled. Accordingly, she has not demonstrated that anyone outside of her protected class was not disciplined or terminated for substantially identical conduct.

Moreover, Skanska has introduced evidence that it terminated Bronson Bradley ("Bradley"), for similar conduct less than two months before it terminated Murphy. (Doc. 89-10 at 1). Murphy agrees that Bradley was not disabled, thus placing him outside her protected class. (*See* Doc. 102 at 7). Much like Murphy, Bradley

26

operated a forklift in an unsafe manner, causing it to tip forward. (Doc. 89-10 at 1). Although, as Murphy points out, Skanska's handbook does not specifically prohibit the type of accident she had, (*see* Doc. 102 at 4), its response to Bradley's conduct is additional evidence that, at Skanska, unsafe equipment operation is sufficient to warrant termination regardless of an employee's disability status. Accordingly, Murphy has not established that Skanska's proffered reason was insufficient to explain its decision to terminate her.

Murphy has not demonstrated that Skanska's legitimate, nondiscriminatory reason was pretextual and, thus, Skanska is also entitled to summary judgment on Murphy's wrongful termination and disparate treatment claims for this independent reason.

### ii.  Failure to Accommodate

Because a claim premised on an employer's failure to accommodate necessarily involves direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework does not apply. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007).

To establish a prima facie claim of failure to accommodate, Murphy must show that: (1) she was disabled; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) Skanska knew or had reason to know of her

disability; (4) she requested an accommodation; and (5) Skanska failed to provide that necessary accommodation. *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (citing *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016)). Once the "plaintiff establishes that an employer failed to accommodate a known disability, the employer bears the burden 'of proving that . . . a proposed accommodation will impose an undue hardship upon the employer.'" *Id.* (quoting *Kleiber*, 485 F.3d at 868-69).

But even if the Court assumes, as discussed above, that Murphy was disabled and was qualified for her position, she has not established that Skanska knew or had reason to know that she had a vision impairment.

Further, Murphy admittedly never requested an accommodation because she was satisfied with the conditions that all Skanska employees worked under. She testified that, once she was told that "everybody's going to have a spotter," she responded, "I'm good, then." (Doc. 89-1, Murphy Dep. at 41:7-10). She also admittedly never asked anyone for a spotter at any time when she needed but didn't have one. (*Id.* at 41:11-22). Accordingly, Skanska cannot be held liable for failing to provide an accommodation that Murphy never requested for a disability that it was unaware she had.

### iii. Failure to Engage in the Interactive Process

Although Skanska argues that Murphy may not bring a separate KCRA claim based on its failure to engage in the interactive process, (Doc. 89 at 18), the Court need not evaluate that argument because Murphy's claim cannot succeed in any event. The Sixth Circuit has uniformly held that a claim based on an employer's failure to engage in the interactive process can only succeed if the plaintiff establishes that she requested a reasonable accommodation and her employer failed to provide it. *See Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011)); *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) (citing *Keith v. Cnty. of Oakland*, 703 F.3d 918, 929 (6th Cir. 2013); *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005)).

Because Murphy has not alleged, let alone established, that she requested an accommodation, Skanska cannot be liable for failing to engage in the interactive process with her.

### D. Plaintiff's Sex Discrimination Claim Against Defendant Skanska

Courts also apply the *McDonnell Douglas* burden-shifting framework to sex discrimination claims under the KCRA. *Bd. of Regents of N. Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 306 (Ky.

2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

<em>i.   Prima Facie Case</em>

Sex discrimination claims under the KCRA are analyzed under federal standards. *Id.* (internal citations omitted). Thus, to establish her prima facie case of sex discrimination, Murphy must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for her position; and (4) she was either replaced by a person outside the protected class or a similarly situated, non-protected employee was treated more favorably. *Vincent*, 514 F.3d at 494 (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Skanska agrees that Murphy is a member of a protected class and that it terminated her, so the Court's analysis will focus on the latter two elements. (*See* Doc. 89 at 19).

Turning to the third element, Murphy has shown that she was qualified for her position. In assessing a plaintiff's prima facie sex discrimination case, "a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). Instead, courts should look to a plaintiff's objective

30

qualifications, which vary depending on the job at issue, but include criteria such as education, experience, and possession of the relevant skills. *Bailey v. Papa John's USA, Inc.*, 211 F. App'x 417, 421 (6th Cir. 2006) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003)).

Accordingly, the Court must set aside Skanska's argument that Murphy was unqualified because of the reason it terminated her, unsafe equipment operation, and consider it as part of the pretext analysis. *See id.* at 421-22 (considering an employee's failure to meet performance expectations only at the pretext stage); *Cline*, 206 F.3d at 660-61, 666 (considering an employee's alleged failure to exemplify the moral values of the church that employed her only at the pretext stage); *Giron v. Tyco Elecs. Corp.*, 762 F. App'x 233, 237-38 (6th Cir. 2019) (considering an employee's alleged behavioral concerns only at the pretext stage).

Skanska has not pointed to any other alleged deficiency related to Murphy's education, experience, or possession of the skills necessary to operate a skid steer. Furthermore, the Union's records indicate that she had the relevant skills to operate such equipment, she had been employed in the industry for at least fifteen years prior to accepting the job with Skanska, and she had been certified as completing a ten-hour construction safety and health course during the month prior to her termination. (Doc. 89-8 at 1; Doc. 95-14 at 42-43). Accordingly, a reasonable jury could

31

conclude that Murphy "did possess the minimum objective qualifications for employment in the field." *See Bailey*, 211 F. App'x at 421.

Complying with its obligation to draw all factual inferences in favor of Murphy, the Court also finds that a reasonable jury could conclude that she was replaced by a male employee. *See Swallows*, 128 F.3d at 992 (citing *Anderson*, 477 U.S. at 255). In its Supplemental Responses to Plaintiff's First Set of Interrogatories, Skanska acknowledged that it hired at least three male Operators after it terminated Murphy and that they may have operated the skid steer she had been assigned. (Doc. 102-2 at 16–17). Accordingly, there is at least a genuine issue of material fact as to whether she was replaced by a non-protected employee or whether, as Skanska contends, Murphy's job duties were redistributed among existing employees who were already performing related work. (*See* Doc. 103 at 7–8). Thus, for the purposes of Skanska's Motion for Summary Judgment, Murphy has satisfied her prima facie case.

### ii.  Pretext

Because Murphy has provided sufficient evidence to establish a prima facie case of sex discrimination in violation of the KCRA, the burden shifts to Skanska to proffer a legitimate nondiscriminatory reason for Murphy's termination. *See*

*Weickgenannt*, 485 S.W.3d at 306 (citing *McDonnell Douglas*, 411 U.S. at 802). As discussed above, Skanska has met its burden by pointing to Murphy's unsafe operation of its equipment. (*See* Doc. 89 at 15; Doc. 89-2 at 1). This shifts the burden back to Murphy to show that Skanska's proffered reason was a pretext for unlawful sex discrimination. *See Weickgenannt*, 485 S.W.3d at 306 (citing *McDonnell Douglas*, 411 U.S. at 802).

But, for the same reasons that Murphy failed to establish that Skanska's proffered reason was a pretext for disability discrimination, she has also failed to establish that it was a pretext for sex discrimination. She has failed to demonstrate that Skanska's proffered reason: (1) had no basis in fact; (2) was not the actual reason for its action; or (3) was insufficient to explain its action. *See Gunn*, 632 F. App'x at 844 (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)).

As discussed above, Murphy has failed to establish that she did not operate equipment in the manner Skanska claimed she did.

Further, although Murphy has made more arguments regarding sex discrimination than disability discrimination, she has nonetheless failed to demonstrate that Skanska was motivated by anything other than its proffered reason. To succeed in using that approach, a plaintiff must "attack[] the employer's explanation by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant." *Id.* (quoting

33

*Smith*, 220 F.3d at 759). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Id.* (quoting *Smith*, 220 F.3d at 759).

The only circumstantial evidence of sex discrimination Murphy points to is her alleged replacement by male employees. (Doc. 102 at 9). But, "the sole fact that [s]he was replaced by a [non-protected] person is insufficient as a matter of law to raise a genuine dispute of material fact as to . . . pretext[]." *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 305–06 (6th Cir. 2016) (citing *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986)). Although Murphy also references the way Skanska's counsel phrased a deposition question as additional evidence of sex discrimination, (*see* Doc. 102 at 11), that bears no relevance whatsoever to Skanska's motivations for terminating her. Accordingly, Murphy has fallen far short of establishing that it is more likely than not that Skanska was motivated by anything other than the way she operated its equipment.

Finally, as to the third method of establishing pretext, Murphy "must demonstrate that other employees outside of her protected class were not fired, even though they were similarly situated and engaged in substantially identical conduct to that which the employer contends motivated its decisions." *Gunn*, 632 F.

34

App'x at 847-48 (citing *Smith*, 220 F.3d at 762). "To be similarly situated, 'the individual with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* at 848 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

In an attempt to satisfy this standard as to sex discrimination, Murphy has pointed to three pieces of evidence: Skanska's failure to terminate James Prince ("Prince"), who allegedly had a syringe at work, its failure to discipline Warren Halterman ("Halterman") for skid steer malfunctions, and its failure to terminate Jamie Marcum ("Marcum"), who is "a smaller man." (Doc. 102 at 7, 11-13). But none of these men were similarly situated to Murphy.

As to Prince, Murphy does not offer any evidence of his conduct, but instead assumes that he had a syringe for the purpose of "drug injection." (*Id.* at 7). But even if there was evidence to support Murphy's conclusion, no reasonable jury could find that Prince engaged in "substantially identical conduct" to Murphy, who undisputedly drove a skid steer into an area where it should not have been. *See Gunn*, 632 F. App'x at 847-48 (citing *Smith*, 220 F.3d at 762). Moreover, Murphy does not dispute that Prince

35

resigned after his syringe was discovered. (*See* Doc. 102 at 11-12). Accordingly, Skanska's failure to terminate him is not evidence of differential treatment. *See Johnson v. Fifth Third Bank*, 685 F. App'x 379, 388-89 (6th Cir. 2017) (finding no evidence of pretext where another employee, who had a different performance history than the plaintiff, was given the chance to resign in lieu of termination).

For the reasons discussed above, Murphy has also failed to show that Halterman's experience with skid steer malfunctions make him similarly situated to her. Murphy's admissions demonstrate that her accident was not caused by any skid steer malfunctions and, thus, they were not the cause of her termination.

Similarly, Halterman's testimony that other employees commonly dug into ground wires or sometimes hit pipes with equipment does not provide Murphy with a similarly situated comparator. (*See* Doc. 102-4, Halterman Aff. ¶ 17). No reasonable jury could conclude that driving a skid steer forward into a box is "substantially identical" to hitting material beneath the ground. *See Gunn*, 632 F. App'x at 847-48 (citing *Smith*, 220 F.3d at 762).

Moreover, because Murphy has not introduced any other evidence regarding these unnamed employees who allegedly hit pipes and wires or what consequences they suffered, no reasonable jury could find that they were similarly situated to her by virtue of

36

dealing with the same supervisor, being subject to the same standards, and lacking differentiating or mitigating circumstances. *Id.* at 848 (quoting *Ercegovich*, 154 F.3d at 352).[13]

Finally, as to Marcum, it is unclear why Murphy has posited that his alleged status as "a smaller man" makes him similarly situated to her. (*See* Doc. 102 at 11). Skanska has not alleged that it terminated Murphy due to her size and Murphy has pointed to no evidence that Marcum had similar issues operating equipment.

Further, Skanska's termination of Bradley, who is male, (Doc. 89-10 at 1), is additional evidence that unsafe equipment operation was sufficient to warrant termination. Accordingly, Murphy has not established pretext via the third method.

Because Murphy has not demonstrated that Skanska's legitimate, nondiscriminatory reason was pretextual, Skanska is also entitled to summary judgment on Murphy's sex discrimination claim.

## E. Plaintiff's Age Discrimination Claim Against Defendant Skanska

The parties also agree that Murphy has voluntarily decided to dismiss her ADEA claim against Skanska. (*See* Doc. 89 at 8; Doc. 89-20 at 1; Doc. 102 at 3). Accordingly, the Court now turns to

---

[13] Because Halterman's testimony does not support Murphy's claims, the Court need not decide whether it should be disregarded based on Murphy's counsel's allegedly impermissible recording of his conversation with her. (*See* Doc. 103 at 12-13; Doc. 108 at 1).

Murphy's final claim for age discrimination under the KCRA. Because Murphy has not introduced direct evidence, the Court must apply the familiar *McDonnell Douglas* burden-shifting framework to this claim as well. *See Wal-Mart*, 184 S.W.3d at 495.

### i.    Prima Facie Case

A plaintiff can establish a prima facie case of age discrimination by demonstrating that she was: (1) a member of a protected class; (2) discharged; (3) qualified for the position from which she was discharged; and (4) replaced by a significantly younger person. *Id.* at 496 (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). Skanska does not dispute that Murphy has established the first two elements, (*see* Doc. 89 at 20), and, as discussed above, the Court finds that there is at least a genuine issue of material fact as to the third.

However, Murphy has not argued that any of her replacements were significantly younger than she is. Moreover, although Skanska's Supplemental Responses to Plaintiff's First Set of Interrogatories contain the month and year of birth for each of the individuals it employed after Murphy's termination, Murphy has redacted those dates on the copy she filed with her Response to Skanska's Motion for Summary Judgment. (*See* Doc. 102-2 at 17). Accordingly, she has failed to set forth specific facts showing

that there is a genuine issue for trial as to the fourth element of her prima facie age discrimination case.

*ii.   Pretext*

But even assuming that Murphy could demonstrate that she was replaced by a significantly younger person, she has failed to demonstrate that Skanska's proffered reason for her termination was pretextual. *See Wal-Mart*, 184 S.W.3d at 497 (internal citation omitted). For the reasons discussed above, no reasonable jury could find that Murphy did not actually operate equipment in an unsafe manner, that Skanska's termination decision was motivated by something other than the manner in which Murphy operated its equipment, or that unsafe equipment operation was insufficient to warrant termination. *See id.* Accordingly, Skanska is also entitled to summary judgment on Murphy's age discrimination claim.[14]

**F. Defendant Skanska's Objections to the Magistrate Judge's December 27, 2022, Minute Entry Order**

Finally, the Court must address Skanska's Objections to Magistrate Judge Candace Smith's December 27, 2022, Minute Entry Order. (Doc. 66). In that Order, Magistrate Judge Smith found that Skanska had failed to comply with an Agreed Order to supplement

---

[14] Because the Court finds that Skanska is entitled to summary judgment on all of Murphy's KCRA claims, it need not evaluate Skanska's arguments that the KCRA does not permit emotional distress damages and that Murphy must have disclosed an expert to address the other potential causes for her distress. (*See* Doc. 89 at 22–26).

discovery responses, granted Murphy's motion to compel those responses, and required Skanska to reimburse the attorney's fees Murphy incurred to file the motion to compel and its corresponding reply brief. (Doc. 63 at 2–3). Skanska argues that the Court's ruling contradicted Federal Rule of Civil Procedure 37(b)(2) because the Agreed Order was not clear and unambiguous and because it rendered a provision in the Court's Scheduling Order "meaningless." (Doc. 66 at 7–15).

Federal Rule of Civil Procedure 72(a) provides that a district judge must modify or set aside any part of a magistrate judge's order on such nondispositive matters if it is "clearly erroneous or is contrary to law." "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made; a determination is contrary to law if the magistrate judge misinterpreted or misapplied applicable law." 14 James Wm. Moore et al., *Moore's Federal Practice* § 72.11[1][b] (Supp. 2022). "Ordinarily, under the clearly erroneous standard, if there are two permissible views, the reviewing court should not overturn the magistrate judge's decision solely because it would have chosen the other view." *Id.*

Skanska's Objections do not demonstrate that it is entitled to relief under these standards. The Agreed Order at issue provided a clear deadline for supplementation and Skanska undisputedly

40

provided its supplementation nearly three months late, on the eve of the oral argument on Murphy's motion to compel. (Doc. 49 at 1; Doc. 63 at 1-2). The Agreed Order did indicate that Skanska was only required to supplement its production by the agreed-upon date if it had any supplemental material or answers and it specifically noted that "Skanska does not agree that there are any discovery deficiencies . . . ." (Doc. 49 at 1). But this language is not ambiguous in light of the fact that Skanska did provide supplemental responses prior to Magistrate Judge Smith's ruling on Murphy's motion to compel. Accordingly, there unequivocally was supplemental material and Skanska unequivocally failed to provide it by the deadline in the Agreed Order. As such, Magistrate Judge Smith's finding that Skanska failed to comply with the Agreed Order and that sanctions were warranted was not clearly erroneous or contrary to law, including Rule 37(b)(2).

Further, it is not dispositive that Magistrate Judge Smith made that finding despite the fact that the parties had not had an informal telephone conference with the Court pursuant to the Scheduling Order. Skanska failed to comply with the Agreed Order and Murphy's alleged failure to comply with the Scheduling Order is a separate matter. Murphy nonetheless satisfied the requirement of Federal Rule of Civil Procedure 37(a)(5)(A)(i) by communicating "at length" with Skanska about the discovery deficiencies, (*see* Doc. 63 at 2), and, accordingly, any failure to schedule an

informal telephone conference with the Court regarding the same deficiencies does not bar the Court from concluding that Skanska violated the Agreed Order and finding that the attorney's fees Murphy incurred for the motion to compel should be reimbursed.

Accordingly, this Court will overrule Skanska's Objections to the Magistrate Judge's Minute Entry Order.

### *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendant Skanska's Motion for Summary Judgment (Doc. 89) be, and is hereby, **GRANTED**;

(2) Defendant Union's Motion for Summary Judgment (Doc. 90) be, and is hereby, **GRANTED**;

(3) Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 106) be, and is hereby, **GRANTED** and Plaintiff's Sur-Reply (Doc. 106-4) is deemed filed concurrently herewith;

(4) Defendant Skanska's Motion to Seal Plaintiff's Reply in Support of her Motion for Leave to File a Sur-Reply (Doc. 110) be, and is hereby, **DENIED**;

(5) Defendant Skanska's Objections to the Magistrate Judge's December 27, 2022, Minute Entry Order (Doc. 66) be, and are hereby, **OVERRULED**; and

(6) A separate judgment shall enter concurrently herewith.

This 15th day of August 2023.



Signed By:

*__William O. Bertelsman__*   WOB

United States District Judge